UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK BROWN,                          :
                                     :CIVIL ACTION NO. 3:16-CV-1820
          Plaintiff,                 :
                                     :(JUDGE CONABOY)
          v.                         :
                                     :
NANCY A. BERRYHILL,[1]               :
Acting Commissioner of               :
Social Security,                     :
                                     :
          Defendant.                 :
                                     :
_____

## MEMORANDUM

Pending before the Court is Plaintiff's appeal from the

Commissioner's denial of Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act ("Act").  (Doc. 1.)

Plaintiff filed an application for benefits on March 13, 2013,

alleging a disability onset date of October 12, 2012.  (R. 13.)

After Plaintiff appealed the initial denial of the claims, a

hearing was held on January 26, 2015, and Administrative Law Judge

("ALJ") Natalie Appetta issued her Decision on March 6, 2015,

concluding that Plaintiff had not been under a disability during

---

[1]  Nancy A. Berryhill is now the Acting Commissioner of Social
Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure which addresses the substitution of parties when a public
officer is replaced, Nancy A. Berryhill should be substituted for
Acting Commissioner Carolyn W. Colvin as the defendant in this
suit.  Fed. R. Civ. P. 25(d).  No further action needs to be taken
to continue this suit by reason of the last sentence of section
205(g) of the Social Security Act, 42 U.S.C. § 405(g), which states
that "[a]ny action instituted in accordance with this subsection
shall survive notwithstanding any change in the person occupying
the office of Commissioner of Social Security or any vacancy in
such office."

the relevant time period. (R. 22.) Plaintiff requested review of the ALJ's decision which the Appeals Council denied on July 11, 2016. (R. 1-5.) In doing so, the ALJ's decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on September 1, 2016. (Doc. 1.) He asserts in his supporting brief that the Acting Commissioner's determination should be remanded for the following reasons: 1) the ALJ erred in her opinion analysis; and 2) the ALJ's credibility assessment is defective. (Doc. 17 at 3.) After careful review of the record and the parties' filings, the Court concludes this appeal is properly granted.

## I. Background

Plaintiff was born on April 8, 1962, and was fifty years old on the alleged disability onset date. (R. 23.) He has a GED and past relevant work as a carpenter and maintenance worker. (R. 21.)

### A. *Medical Evidence*

William R. Milroth, M.D., was Plaintiff's primary care physician during the relevant time period. (*See*, *e.g.*, R. 484-86.) His office notes consist primarily of line-entries indicating medications prescribed. (*Id.*) Plaintiff appears to have seen Dr. Milroth at least monthly from June 2011 through January 2012. (R. 396-99.) Conclusions regarding treatment and medications cannot be ascertained from September 2012 and June 2013 record entries. (R. 486.) December 27, 2013, notes indicated that Plaintiff was self-

pay, that he stopped all medications and had been off them for one year due to no insurance, and a Medical Assistance form would be filled out. (*Id.*) The provider further noted that Plaintiff had "enough money to smoke." (*Id.*)

Approximately one month before Plaintiff's alleged onset date of October 12, 2012, Amatul Khalid, M.D., performed a consultative examination. (R. 418-21.) In his September 18, 2012, patient history, Dr. Khalid noted that Plaintiff's blood sugars had not been checked in four months and he had not been taking his medications since then because he did not have insurance and he was trying to control the diabetes with his diet. (R. 418.) Plaintiff reported that his toes and fingertips were burning but he did not have blurry vision and he had no kidney damage that he knew of. (*Id.*) Plaintiff also reported left-sided back pain which had started about two years earlier. (*Id.*) He said x-rays and a bone scan had not found anything to explain the pain, he had been told it was possibly arthritis, he had seen a chiropractor which had made it worse, and he had been on pain pills but was not taking anything for the pain at the time. Plaintiff rated his pain at 4/10 at the time of the visit and said it was worse if he did too much walking or standing. (*Id.*) Musculoskeletal physical examination showed scoliosis, decreased range of motion with lumbar flexion of 70/90 degrees, decreased left shoulder elevation of 140/150 degrees, left upper extremity decreased muscle

strength/tone of 3/5, grip 60% bilaterally, decreased left lower extremity muscle strength/tone of 3/5, and single leg raise of 25 degrees on the left and 55 degrees on the right with pain in the lower back. (R. 420.) Neurologic examination showed decreased vibratory sensation of bilateral lower extremities from the ankle down and bilateral hand tremor at rest and movement. (R. 421.) Dr. Khalid's assessment included the following: Diabetes Mellitus for which Plaintiff had been prescribed Metformin and Levemir four months earlier but he was not on the medications due to cost; diabetic neuropathy; thoracic dextroscoliosis and lumbar levoscoliosis causing chronic back pain; normal gait with some minimal problem getting on and off the exam table or walking heels to toes; and "tremor, essential tremors, with activity and rest, writing is nearly impossible for him." (*Id.*)

Dr. Khalid performed another evaluation on May 21, 2013. (R. 429-32.) In the history portion of his report, he noted that Plaintiff had scoliosis for a long time and arthritis of the spine. (R. 429.) Plaintiff said he had pain in the ankles, knees, hips, and shoulders. (*Id.*) He rated his pain at rest at 7, it increased with movement, and he did not take pain medications because they did not help. (*Id.*) Plaintiff said that he was not taking the diabetes medications because he had no money or insurance and could not afford the medication. (*Id.*) He complained of tingling and numbness in his hands and feet and that they were cold most of the

4

time.  (R. 429.)  Musculoskeletal examination showed that Plaintiff had a slight limp, upper and lower extremity power 3/5 on both sides, decreased vibration sensation on both hands up to elbows and both legs up to ankles, grip strength of 50%, deep tendon reflexes diminished on both sides, dextroscoliosis of thoracic spine and levoscoliosis of lumbosacral spine, tenderness on exam, straight leg test positive on both sides at 50 degrees, and tremors noted at rest in the left hand.  (R. 431.)  Neurologic exam showed decreased vibratory sensation on bilateral lower extremities from the ankle down.  (*Id.*)  Dr. Khalid's assessment was essentially the same as that rendered in September 2012.  (R. 421, 431.)

In March 2014, Dr. Milroth referred Plaintiff to Jeffrey Small, D.O., for a colonoscopy. (R. 488.)  Office notes in March and April include the assessments that Plaintiff had diabetes mellitis "without mention of complication, . . . not stated as uncontrolled."  (R. 488, 493.)  The records indicate physical examination showed "[e]xtremities: unremarkable" with no elaboration regarding the extent of the examination performed. (*Id.*)  By history, neuropathy was noted.  (R. 475.)

## B.  *Opinion Evidence*

## 1.  <u>Consultative Examiner</u>

Dr. Khalid completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities on September 24, 2012.  (R. 422-27.)  He found the following:  Plaintiff could

lift and carry 2-3 pounds frequently and no more than that
occasionally; he could stand and walk for 1-2 hours in an 8-hour
day and sit for 1-1½ hours; his abilities to push and pull were
limited in the lower extremities because he was unable to feel
pedals due to neuropathy; he could occasionally bend, kneel, stoop,
crouch, and balance and he could never climb; he was limited in his
ability to reach above his head, feel and see; and his impairments
were affected by vibration and temperature extremes.  (R. 422-23.)

On the Medical Source Statement of Ability to Do Work-Related
Activities (Physical) dated May 21, 2013, Dr. Khalid opined that
Plaintiff could lift and carry up to twenty pounds occasionally;
without interruption he could sit for one hour at a time, stand for
twenty minutes, and walk for thirty minutes; and, in an eight-hour
day, he could sit for one hour, stand for thirty minutes, and walk
for thirty minutes.  (R. 438.)  Regarding the use of his hands, Dr.
Khalid found that Plaintiff could occasionally reach overhead,
could frequently reach otherwise, could frequently handle, could
occasionally finger with his right hand and never with his left,
and could frequently push and pull.  (R. 439.)  Regarding the use
of his feet, Dr. Khalid opined that Plaintiff could occasionally
operate foot controls.  (*Id.*)  He concluded that Plaintiff could
occasionally climb stairs and ramps, balance, and stoop, and he
could never climb ladders or scaffolds, kneel, crouch, and crawl.
(R. 440.)  Noted environmental limitations were that Plaintiff

could never tolerate exposure to unprotected heights, occasionally tolerate exposure to moving mechanical parts and operating a motor vehicle, and at least frequently tolerate exposure to other environmental conditions. (R. 441.) Regarding Plaintiff's ability to perform other activities, Dr. Khalid noted that Plaintiff could not travel without a companion for assistance. (R. 442.)

## 2. **Treating Physician**

Dr. Milroth completed a Medical Opinion Re: Ability to Do Work-Related Activities (Physical) on November 20, 2011. (R. 482-83.) He made the following findings: Plaintiff could lift and carry less than ten pounds on an occasional basis; he could lift and carry a maximum of ten pounds on a frequent basis; he could stand and walk less than two hours in an eight-hour day; he could sit less than two hours in an eight-hour day; without changing positions, Plaintiff could sit for twenty minutes and stand for twenty minutes; he would need to walk around every thirty minutes for five minutes at a time; he would need to shift at will from sitting or standing/walking; and he would frequently need to lie down. (R. 482.) Dr. Milroth noted that his assessments were supported by medical findings of severe neuropathic pain in Plaintiff's legs, feet, and hands. (*Id.*) Regarding postural activities, Dr. Milroth concluded that pain in the extremities prevented Plaintiff from climbing ladders, and he could occasionally twist, stoop, crouch, and climb stairs. (R. 483.)

He opined that Plaintiff was unable to reach, finger, and push/pull because of pain and his ability to kneel, balance and crawl were also affected. (*Id.*)  Dr. Milroth noted that Plaintiff's symptoms would seldom interfere with the attention and concentration required to perform simple, work-related tasks and Plaintiff would likely miss more than four days per month because of his impairments. (*Id.*)

### 3.  **Medical Consultants**

State non-examining medical consultants Abu N. Ali, M.D., and Hong S. Park, M.D., provided medical assessments on October 11, 2012, and May 30, 2013, respectively. (R. 77-81, 88-91.)  Both doctors opined that Plaintiff could occasionally lift and/or carry twenty pounds; he could frequently lift and/or carry ten pounds; he could stand and/or walk for a total of about six hours in an eight-hour day; and he could sit for a total of about six hours in an eight-hour day. (R. 79, 89.)  Dr. Ali opined that Plaintiff had no limitations in his abilities to push and/or pull other than what was shown for lifting and carrying. (R. 79.)  Dr. Park opined that Plaintiff's abilities to push and/or pull were limited in both lower extremities. (R. 90.)  Dr. Ali found that Plaintiff could occasionally climb ramps/stairs and ladders/ropes/scaffolds, and he could occasionally balance, stoop, kneel, crouch, and crawl. (R. 80.)  Dr. Park found the same except he concluded that Plaintiff could never climb ladders, ropes or scaffolds. (R. 90.)

## C. Hearing Testimony

Plaintiff testified that he had a maintenance job at Hagerstown College from September 2002 to June 2011 and he stopped working because of his back. (R. 38.) At the time of the hearing he said that neuropathy (problems with his feet, hands, and left shoulder) also made it difficult to work a full-time job year round. (R. 40.) He reported that the neuropathy in his hands had been getting worse over the preceding year. (R. 41.)

ALJ Appetta asked Plaintiff about his medication compliance. (R. 41.) Initially Plaintiff responded that he had been compliant. (*Id.*) Upon further questioning and the suggestion that Plaintiff may not have taken medication "because you didn't have insurance," Plaintiff acknowledged that he had stopped taking medication for a while. (R. 42.) He further explained that he had also stopped briefly when he was feeling better but started again when he was not feeling well and, at the time of the hearing, he was taking medication again. (*Id.*)

Regarding activities of daily living, Plaintiff, who lives in an apartment in his parents' house, said that he does a little cooking, does small projects for his parents, and does some grocery shopping. (R. 35, 44.) He testified that he does not lift or carry anything over ten or fifteen pounds, he goes for short walks (up to fifteen or twenty minutes), and standing in place bothers his feet and back. (R. 45.) He estimated that he could stand for

up to an hour. (R. 46.) Plaintiff also said he had problems sleeping because of his back. (R. 48.)

Both the ALJ and Plaintiff's attorney questioned him about work he had done the previous summer at his brother's business. (R. 39-40.) Plaintiff testified that he worked at his brother's seasonal concession business between Memorial Day and Labor Day in 2014. (R. 39.) He worked at most five days a week for eight hours or less and his job was to supervise "kids" who were renting out boats. (R. 39-40.) Plaintiff said he would consider working at the concession again depending on how his back was doing because the sitting and standing on concrete had been difficult. (R. 40.) He also explained that he was able to stretch out in a recliner during the day and he did so at least eight or ten times a day for ten to thirty minutes. (R. 48-49, 54.) Plaintiff said he missed about two or three days a month, primarily when his back was bothering him too much. (R. 49.)

Plaintiff testified that on a bad day he alternated between sitting in the recliner and standing for five to fifteen minutes, then lying down for up to an hour and a half. (R. 51.) He said his tremors were bilateral and constant, he had trouble writing and baiting fish hooks, and the numbness in his extremities was constant and disrupted his balance. (R. 52.)

ALJ Appetta asked Vocational Expert Alina Kurtanich ("VE") to consider a hypothetical individual of Plaintiff's age, education,

and work experience who could perform light work with the following limitations:

> [n]o climbing ladders, ropes, or scaffolds, can perform other postural maneuvers only occasionally, must avoid hazards such as unprotected heights, or dangerous or moving machinery or parts, and must avoid vibrations such as vibrating machinery, or equipment, and must avoid temperature extremes such as extreme cold or wetness, as well as heat and humidity.

(R. 61.)  The VE testified that such an individual could not perform Plaintiff's past work but jobs existed in the national economy that he could perform such as electronic worker, sorter, and mail clerk.  (R. 61-62, 64.)  She also testified that there would be no change if the individual required a sit/stand option allowing him to alternate or change positions five minutes of every hour while remaining on task.  (R. 62.)  ALJ Appetta than asked how employment would be impacted if the individual "needed to lie down or lay in a recliner for roughly an additional hour beyond the scheduled breaks, or what is customarily allowed in terms of breaks."  (R. 63.)  The VE responded that the individual would not be employable.  (*Id.*)  She said the same would be true if the individual needed to frequently lie down during the day or would miss more than three days per month on a regular and continuing basis.  (*Id.*)

Plaintiff's attorney then asked the VE whether the hypothetical individual would be able to work if he "were limited

11

to sitting for up to no more than two hours, and also standing and walking up to no more than two hours." (R. 65.) The VE responded that there would be no jobs for such an individual. (*Id.*) In response to a question about lifting, the VE testified that the standard is ten pounds for sedentary. (*Id.*)

### D. *ALJ Decision*

In her March 6, 2015, Decision, ALJ Appetta made the following Findings of Fact and Conclusions of Law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. Although it appears that the claimant may have engaged in substantial gainful activity ("SGA") since the alleged onset date of October 12, 2012, further evidence would need to be obtained and additional evaluations made to reach a decision on this issue. Given the remaining findings, it is unnecessary to delay a decision in order to develop the issue of substantial gainful activity any further (20 CFR 404.1571 et seq.)

3. The claimant has the following severe impairments: thoracic and lumbar scoliosis; mild degenerative joint disease of the thoracic spine; mild degenerative joint disease of the left AC joint; and diabetes with neuropathy (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the

entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he cannot climb ladders, ropes or scaffolding, while being able to perform all other postural activities occasionally, and he must avoid all exposure to hazards, such as unprotected heights and dangerous moving machinery or parts. Further, the claimant must avoid exposure to temperature extremes and extremes of cold, wetness, heat and humidity, while also needing to avoid vibrating parts. Finally, the claimant must be permitted to alternate positions between sitting and standing for five minutes of every hour, while remaining on task.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 8, 1962, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has attained a GED and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can

perform (20 CFR 404.1569 and
                    404.1569(a)).

(R. 16-22.)  Other relevant portions of the ALJ's Decision will be

referenced in the Discussion section of this Memorandum.

## II. Disability Determination Process

     The Commissioner is required to use a five-step analysis to

determine whether a claimant is disabled.[2]  It is necessary for the

Commissioner to ascertain: 1) whether the applicant is engaged in a

substantial activity; 2) whether the applicant is severely

impaired; 3) whether the impairment matches or is equal to the

requirements of one of the listed impairments, whereby he qualifies

for benefits without further inquiry; 4) whether the claimant can

perform his past work; 5) whether the claimant's impairment

---

     [2]  "Disability" is defined as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less than 12 months . . . ."  42 U.S.C.
§ 423(d)(1)(A).  The Act further provides that an individual is
disabled

               only if his physical or mental impairment or
               impairments are of such severity that he is not
               only unable to do his previous work but cannot,
               considering his age, education, and work
               experience, engage in any other kind of
               substantial gainful work which exists in the
               national economy, regardless of whether such
               work exists in the immediate area in which he
               lives, or whether a specific job vacancy exists
               for him, or whether he would be hired if he
               applied for work.

42 U.S.C. § 423(d)(2)(A).

                              14

together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy. (R. 23.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to

support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits,

16

"to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Comm'f of Soc. Sec.*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*,

181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *Albury v. Comm'r of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (a remand is not required where it would not affect the outcome of the case.). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

Plaintiff asserts that the Acting Commissioner's determination should be remanded for the following reasons: 1) the ALJ erred in

18

her opinion analysis; and 2) the ALJ's credibility assessment is defective. (Doc. 17 at 3.) The Court will address each of these in turn.

## A.  *Opinion Analysis*

Plaintiff asserts that ALJ Appetta erred when she failed to properly analyze the consistent opinions of Dr. Milroth and Dr. Khalid. (Doc. 17 at 3.) Defendant responds that substantial evidence supports the ALJ's weighing of the medical opinions. (Doc. 18 at 10.) The Court concludes remand is required for further consideration of the opinions at issue.

Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight. *See*, *e.g.*, *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). This principal is codified at 20 C.F.R. 404.1527(c)(2), and is widely accepted in the Third Circuit. *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986). The regulation addresses the weight to be given a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we

will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).[3] "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted); see also *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). In choosing to

---

[3] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

Similarly, greater deference is due an examining source than a non-examining source. 20 C.F.R. § 404.1527(c)(1). Section 404.1527(c)(3) provides the following:

> The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

*Id.*

ALJ Appetta gave significant weight to the State agency consulting physicians, less weight to the consultative examiner, Dr. Khalid, and no weight to the treating physician, Dr. Milroth. (R. 20-21.)

ALJ Appetta assigned limited weight to the consultative

examiner's opinions because she found

> they are inconsistent with overall evidence,
> which does not appear to indicate significant
> limitations. Further, Dr. Khalid's
> assessments are inconsistent in that from
> September 2012 to May 2013, Dr. Khalid
> decreased claimant's abilities to stand, walk
> and sit, yet he simultaneously increased the
> claimant's ability to lift and carry from 2-3
> pounds to up to 20 pounds. Additionally, Dr.
> Khalid's reports expressly acknowledge the
> claimant's non-compliance with his diabetes
> medications, while noting mostly "minimal"
> findings of examination, and the claimant's
> most recent lumbar x-ray was normal.

(R. 21.)

The Court finds several problems with this assessment. First, the ALJ does not indicate how Dr. Khalid's evaluations/opinions are "inconsistent with overall evidence." (R. 21.) Importantly, she does not provide citation to contrary evidence or elaborate on what evidence does not "indicate significant limitations." (*Id.*)

Second, ALJ Appetta's inconsistency finding fails to take into account the differences in the forms which Dr. Khalid completed for the September 2012 and May 2013 evaluations. (*See* R. 422-23, 437-42.) Further, on the first form Dr. Khalid indicated how much Plaintiff could "frequently" lift and carry, on the second form he indicated how much Plainntiff could "occasionally carry"--on the first he did not indicate how much Plaintiff could occasionally lift and carry and on the second he did not indicate how much Plaintiff could frequently lift and carry. (*See id.*) Similarly, no inherent contradiction exists between a decreased ability to

stand, walk, and sit and an increase in the amount a person is able to lift and carry given the different functions being assessed, the intervening eight-month period, and the difference in the evaluation tools previously mentioned. Because comparisons and claimed inconsistencies can only be evaluated contextually, the ALJ's criticism cannot provide a basis for undermining Dr. Khalid's opinions.

Third, the ALJ's reference to Dr. Khalid's acknowledgment of Plaintiff's non-compliance with his diabetes medications and "'minimal' findings of examination" (R. 21) are conclusory statements unsupported by the analysis required for the Court to determine whether the ALJ's assessment is supported by substantial evidence. The ALJ does not explain how medication non-compliance affects Dr. Khalid's findings. If she is inferring that Plaintiff's subjective reporting to Dr. Khalid regarding his symptoms are undermined by medication non-compliance, the ALJ must do more, particularly in that an ALJ may only rely on a lack of treatment compliance in making an adverse credibility finding after considering the reasons for the lack of compliance. *See*, *e.g.*, *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2007). Pursuant to SSR 96-7p, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular treatment without first considering any explanations that the individual may

provide." SSR 96-7p, 1996 WL 374186, at *7.[4]  Here Plaintiff

provided an explanation to Dr. Khalid regarding his failure to take

his diabetes medication during that time period--lack of insurance

and no money.  (R. 42, 418, 429.)  Though ALJ Appetta mentioned

non-compliance in her credibility assessment, she did not discuss

Plaintiff's lack of insurance as a factor in play at certain

relevant times.  (*See* R. 18.)  In her medical evidence review, she

---

[4]  SSR 96-7p was superseded by SSR 16-3p effective March 28, 2016.  SSR 16-3p, 2016 WL 1119029, at *1 (S.S.A.).  SSR 16-3p eliminates the word "credibility" from the sub-regulatory policy because the regulations do not use the term.  *Id.*  The Seventh Circuit explained the change in *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016):

> Recently the Social Security Administration announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." . . . The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.

*Id.*  Substantively, SSR 16-3p's guidance concerning the evaluation of subjective symptoms in disability claims is largely consistent with the policies set out in SSR 96-7p regarding the assessment of the credibility of an individual's statements.  *See*, *e.g.*, *Sponheimer v. Comm'r of Soc. Sec.*, Civ. No. 15-4180, 2016 WL 4743630, at *6 n.2 (D.N.J. Sept. 8, 2016).  In this case, ALJ Appetta issued her Decision prior to the effective date of SSR 16-3p so her obligation was to follow the guidance set out in SSR 96-7p.  Therefore, the Court references the standards set out in SSR 96-7p in this Memorandum.

notes the correlation between not taking diabetes medicine and lack of insurance/money which Plaintiff reported to Dr. Khalid, but she does not discuss how this affects Plaintiff's credibility or, as noted above, undermines Dr. Khalid's findings. (*See* R. 19.)

Finally, ALJ Appetta's statement that Dr. Khalid noted "mostly 'minimal' findings" of examination is not supported by citation and appears to be a subjective assessment which does not explain why problems found in physical examinations were "minimal"–-findings which the ALJ herself referred to as "moderate" in her review of the medical evidence. (*See* R. 19-20.)

Because the the ALJ has not provided valid reasons for discounting Dr. Khalid's opinions, the Court cannot conclude that her assessment is based on substantial evidence.

Turning now to the ALJ's consideration of Dr. Milroth's opinion, ALJ Appetta assigned no weight to the opinion for several reasons. (R. 20-21.) The Court agrees with the ALJ that the record does not contain objective treatment notes from Dr. Milroth. (*See* R. 20.) A review of the evidence shows only sparse records from Dr. Milroth and sparse treatment during some portions of the relevant time period. (*See*, *e.g.*, R. 484-87.) However, the record does show that Dr. Milroth was Plaintiff's treating physician during the relevant time, and Plaintiff was seen regularly during certain periods. (*Id.*)

The first reason proffered for discounting the opinion was the

ALJ's conclusion that Dr. Milroth seemed to contradict his "extreme assessments" with his opinion that Plaintiff's impairments would "'seldom' result in symptoms severe enough to interfere with the attention and concentration required to perform simple work-related tasks."  (R. 20 (citing R. 482-83, 507-08).)   The form question asks the following: "How often are your patient's symptoms associated with their impairments severe enough to interfere with attention and concentration required to perform simple work-related tasks?"  The question does not stipulate an eight-hour day or relate to any exertional level.  With the open wording of the inquiry, the ALJ's perceived contradiction does not provide a reason to undermine the opinion in that the limitations on physical activities assessed by Dr. Milroth do not necessarily implicate attention and concentration if Plaintiff were to perform simple work-related tasks within the parameters he outlined.  Conversely, his "seldom" response does not necessarily mean that pain which may be associated with performing tasks outside of the recommended range/duration would not affect attention and concentration.

      After noting the lack of objective treatment notes and Dr. Small's examination finding that Plaintiff's extremities were unremarkable, as well as the fact that Plaintiff did not mention that he had any complications with his diabetes or that it was uncontrolled, ALJ Appetta concluded that Dr. Milroth's extreme limitations were inconsistent with the evidence as a whole "which

26

indicates only some mild musculoskeletal impairments, while also indicating non-compliance by the claimant regarding treatment of his diabetes." (R. 21.) As noted above, reference to non-compliance without further analysis is problematic as is characterizing Plaintiff's musculoskeletal impairments as "mild." A further problem with the ALJ's analysis is her reliance on Dr. Small's examination findings and assertion that "no mention was made of any complications with diabetes" (R. 21) in that there is no indication that the colonoscopy-related physical examination included a comprehensive extremity assessment (similar to those conducted by Dr. Khalid) and the ALJ failed to note that Plaintiff's medical history included neuropathy which Dr. Khalid related to diabetes (R. 421, 431, 475). Finally, in her assessment of Dr. Milroth's opinion, the ALJ did not acknowledge the objective clinical findings made by Dr. Khalid in his two consultative examinations--findings which arguably support Dr. Milroth's limitations.

Because the the ALJ has not provided adequate reasons for discounting Dr. Milroth's opinion, the Court cannot conclude that her assessment is based on substantial evidence.

Having determined that ALJ Appetta's analyses of the opinions of Dr. Khalid and Dr. Milroth are insufficient, the Court must consider whether these errors are harmless. The Court cannot deem these errors harmless because the RFC assessed is based on the

ALJ's assignment of significant weight to the State non-examining sources which found limitations substantially different from those assessed by Dr. Khalid and Dr. Milroth. Given the analytical deficits discussed above, a proper analysis of the examining source opinions could yield exertional limitations incompatible with light work, the full range of which requires "a good deal of standing or walking, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls." 20 C.F.R. § 404.1567(b). While the ALJ did not find Plaintiff capable of a full range of light work, she did not definitively account for limitations on the amount of time Plaintiff could stand/walk or limit his abilities to push/pull, the latter having been found limited by Drs. Khalid, Milroth, and Park (R. 90, 422-23, 439, 483). Furthermore, manipulative limitations found by Drs. Khalid and Milroth (R. 439, 483) are not accounted for in the RFC nor are they properly discounted in the ALJ's decision. *See Cotter*, 642 F.2d at 706 (ALJ may not reject pertinent or probative evidence without explanation). In that Plaintiff, as a person "closely approaching middle age," with a high school education and without transferable skills, would be found disabled if he were found capable of sedentary rather than light work, 20 C.F.R. Part 404, Part 404, Subpart P, Appendix 2, Grid Rule 201.14, a more thorough evaluation of the evidence is required. For all of these reasons,

remand is necessary.[5]

## B. *Credibility Assessment*

Plaintiff maintains the ALJ erred because her credibility assessment is generally defective, specifically because she did not consider Plaintiff's work history. (Doc. 17 at 20.) Defendant responds that the ALJ's credibility determination is supported by the record. (Doc. 18 at 20.) The Court concludes that the ALJ should reconsider the credibility determination upon remand.

Because remand is required for the reasons stated above, detailed discussion of this claimed error is not warranted. However, the Court notes that, as previously discussed, treatment non-compliance should not be used as a basis to discount Plaintiff's credibility without a full discussion of the claimed reasons for the lack of compliance. Further, though not a reason for remand, Plaintiff's long work history should be specifically considered by the ALJ in explaining her credibility finding.

## V. Conclusion

For the reasons discussed above, Plaintiff's appeal is properly granted and this matter is remanded to the Acting Commissioner for further consideration. An appropriate Order is

---

[5] Given the sparse record and some consistency between the examining providers, this may be a case where the ALJ determines on remand that further development of the record is warranted. *See* 20 C.F.R. § 404.1520b(c)(1); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204-05 (3d Cir. 2008).

filed simultaneously with this action.


                                        S/Richard P. Conaboy
                                        RICHARD P. CONABOY
                                        United States District Judge

DATED: April 25, 2017